W. D. NORWOOD and wife v. KING KING.

*Excusable Negligence—Discontinuance.*

1. On motion to set aside a judgment on the ground of excusable negligence, it appeared that the judgment was rendered by default in 1875, six months after return of summons; defendant did not employ counsel to attend to the case, but relied upon the assurances of another to do so; no defence was made to the action by reason of the attorney's mistaking the case, and no further attention was given to the matter until a year after judgment and eighteen months after the attorney was spoken to; *Held*, that the neglect was inexcusable.

2. *Held further*, that the institution of an independent action in respect to the subject matter of the controversy, in lieu of a renewal of the motion, is such an abandonment of the remedy by motion as worked a discontinuance of the same.

(*Caldwell* v. *Parks*, Phil. 54; *McLean* v. *McLean*, 84 N. C., 366, cited and approved.)

MOTION to set aside a judgment under section 133 of the Code of Civil Procedure, heard at Fall Term, 1880, of NORTHAMPTON Superior Court, before *Graves, J.*

The following are the facts found by the court:

1. That a summons was issued and served on the defendant returnable to fall term, 1874.

2. That as soon as the summons was served on defendant, he went to John W. Pugh, his grantor of the land sued for, and asked what he should do, and Pugh told him to make himself easy, that he had already employed James Vinson, an attorney at law, resident at the court-house of said county, to defend the action.

3. That relying upon this assurance, the defendant took no further action in the matter then, and at spring term, 1875, judgment by default was rendered against him.

4. That he did not know of the judgment until May, 1876, when Pugh informed him of it, and told him he had better go at once and see Mr. Vinson; that he went immediately to see Vinson, and was told by him that judgment had been taken at spring term, (May) 1875, and he further told affiant that Pugh had employed him to defend the action, but supposing the action had been brought against Pugh, he had missed the case, and had made no defence, and had only discovered his mistake a few days before.

5. That at spring term, 1876, on Wednesday of the second week, in May, affiant made affidavit setting forth substantially the foregoing statement, and upon it moved to have the said judgment set aside, and His Honor (Judge Henry) refused to set aside the judgment, on the ground that he

6

did not have jurisdiction, and that it belonged to the juris-
diction of the judge of the 6th judicial district, (Judge
Watts) of which the said county of Northampton formed a
part.

6. That no record was made of the action of the judge at
spring term, 1876.

7. That the judge then presiding (Henry) took the pa-
pers and forwarded them to Judge Watts.

8. That Judge Watts took no action and the papers were
never returned, and are lost.

9. That a writ of possession on the judgment was issued
and executed in August, 1876, and all the costs paid by the
defendant in the latter part of the same year.

10. That at the instance of the defendant, by the advice
of counsel, a suit was instituted in the name of the said
Pugh against the plaintiff, Norwood, which is still pending.

11. That on the 8th of May, 1879, the defendant being so
advised filed his affidavit setting out the grounds upon
which he renewed his motion to set aside the said judgment
under section 133 of the Code.

12. That on the 18th day of March, 1879, T. W. Mason,
counsel for the defendant, read to R. B. Peebles, who had
appeared as counsel for the plaintiffs, a notice of the said
motion of the 8th of April, and Mr. Peebles said he was
not authorized to accept the service, but that he appeared
as counsel for plaintiffs to resist this motion.

13. That upon the hearing, the defendant offered a paper
writing purporting to be a notice of the motion, and pro-
posed to prove that it was duly served by proving an
alleged indorsement of service, signed by one M. A. Moore,
a constable now dead, to be in the handwriting of said
Moore, which proof of service was adjudged insufficient.

The motion to set aside the judgment was resisted by the
plaintiffs upon the grounds: 1. Want of notice of the mo-
tion. 2. Motion not made within a year and a day. 3. A

motion in cause was not the remedy. 4. No case of excusable neglect was made out.

The motion was refused and the defendant appealed.

*Mr. R. B. Peebles,* for plaintiffs.
*Mr. Thos. W. Mason,* for defendant.

ASHE, J. Conceding the notice of the motion to have been legally made, that it was made within a year after the rendition of the judgment, and that the defendant pursued the proper remedy, we are of the opinion the facts found are not sufficient to entitle him to the relief sought by his motion, and that there was no error in the ruling of the court below.

The judgment sought to be set aside was rendered by default at May term, 1875, six months after the return term of the summons. The affiant had not employed a lawyer, but relied upon the assurances of his grantor, (Pugh), that he had employed a lawyer to attend to the case. What claims he had upon his grantor to perform this service for him does not appear; but he recognized him and relied upon him as his agent to manage the case for him.

Pugh spoke to Mr. Vinson, a member of the bar, to attend to the case, and this was all the attention given to the cause by the affiant, his agent, or attorney, until a year after the rendition of the judgment, and at least eighteen months after the attorney was spoken to, to attend to the case. It is true the attorney alleged that he failed to make an appearance in the case, because he looked on the docket for the name of Pugh, supposing it was he who was sued, and did not find such a case.

It was very great negligence in the affiant and his agent in permitting all this time to pass without one word with the attorney in regard to the defence of the action.

The action was in nature of ejectment, to recover land,

and the affiant and his agent ought to have known that in such an action something more was necessary to be done than simply to have an attorney's name marked to the case, that a defence could not be made without an answer, and an answer could not be filed without a bond for costs. In any action which it is proposed to defend, it would be inexcusable negligence in the defendant to allow so many terms to pass without seeing his attorney and apprising him of the grounds of his defence.

For a further excuse, the affiant says that he did not know of the existence of this judgment against him until May term, 1876, and that within a year after its rendition, he made a motion before Judge Henry, then presiding in said court, to have the judgment set aside, but he declined to do so upon the ground as alleged by him that he had no jurisdiction, and that application should be made to Judge Watts, the resident judge of the district; that the papers were sent to him by Judge Henry and he lost them ; that thereupon, upon the advice of counsel, Pugh, his grantor, brought an action against the purchaser of the land under the execution on the judgment; and that action is still pending ; and that in May term, 1879, he renewed his motion to set aside the judgment.

We cannot see that these facts at all improve the affiant's grounds for relief.

Instead of moving the court, at the first term after it was discovered that his affidavit and accompanying papers could not be found, to put his motion upon the docket *nunc pro tunc*, or even renewing his motion at the first opportunity, he relied for relief upon an action brought by Pugh to recover the land, and did not renew the motion until the spring of 1879, three years after his first motion was made. The recourse, with his consent, to the action of ejectment in lieu of his motion, was a clear abandonment of that remedy. It was such an abandonment as worked a discontinuance of

the motion. *Caldwell* v. *Parks*, Phil. Law, 54. There, a petition for a public road having been carried by appeal from the county to the superior court, the judge made a decree in favor of the petitioners, and thereupon ordered a *procedendo* to be issued to the county court, and it was held, " that although the latter part of this judgment was erroneous, and the court should have ordered a writ to issue from its office, yet, inasmuch as the parties had obeyed it, and carried the case back into the county court, the petition was thereby *discontinued*, and therefore after several years of unsuccessful litigation in the cause had occurred, in both courts, the petitioners could not resort to the judgment above mentioned, and move for an order to summon a jury and lay out the road."

On the point of excusable neglect under section 133 of Code, we have had numerous decisions, which it is to be regretted are not always reconcilable, but the case of *McLean* v. *McLean*, 84 N. C., 366, is similar to this, and the principle there decided, we think, governs and disposes of this case. That was a case where the summons was regularly served upon the defendant, and the counsel employed by him failed to enter his pleas, and the defendant made no inquiry as to the disposition of the case until nearly five years after rendition of the judgment, and it was held that his laches were inexcusable. No error.

No error.            Affirmed.